1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA

11
12

BRYAN KELLY WALLACE,                    )   Case No. CV 12-3983-SP
                                        )
13

              Plaintiff,                )
                                        )
14

       v.                               )   MEMORANDUM OPINION AND
                                        )   ORDER
15
                                        )
CAROLYN W. COLVIN,                      )
16

Acting Commissioner of Social Security  )
Administration,                         )
17
                                        )
              Defendant.                )
18
                                        )
19  ─────────────────────────────────────  )

20                               **I.**

21                        **INTRODUCTION**

22          On May 21, 2012, plaintiff Bryan Kelly Wallace filed a complaint against

23   defendant, the Commissioner of the Social Security Administration

24   ("Commissioner"), seeking a review of a denial of supplemental security income

25   ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes

26   before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court

27   deems the matter suitable for adjudication without oral argument.

28          Plaintiff presents a single disputed issue for decision:  whether the

                                        1

1   Administrative Law Judge ("ALJ") properly rejected the opinions of Drs. Jackson
2   and Betty L. Borden, plaintiff's treating and examining psychologists,
3   respectively.[1]   Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at
4   3-8; Memorandum in Support of Defendant's Answer at 2-6.

5         Having carefully studied, inter alia, the parties's moving papers, the
6   Administrative Record ("AR"), and the decision of the ALJ, the court concludes
7   that, as detailed herein, the ALJ improperly rejected the opinions of plaintiff's
8   treating and examining physicians without providing specific and legitimate
9   reasons supported by substantial evidence for doing so.  Therefore, the court
10  remands this matter to the Commissioner in accordance with the principles and
11  instructions enunciated in this Memorandum Opinion and Order.

12                                    **II.**

13                    **FACTUAL AND PROCEDURAL BACKGROUND**

14        Plaintiff, who was forty-five years old on the date of his June 22, 2010
15  administrative hearing, has a tenth grade education.  *See* AR at 28, 35, 48, 50-51.
16  His past relevant work includes employment for a mowing service.  *Id.* at 35, 61.

17        On January 30, 2009, plaintiff applied for SSI, alleging that he had been
18  disabled since June 15, 2002 due to schizoaffective disorder, substance abuse,
19  antisocial personality disorder, bi-polar disorder, and major depression.  *Id.* at 28,
20  82-84, 90, 161.  Plaintiff's application was denied initially and upon
21  reconsideration, after which he filed a request for a hearing.  *Id.* at 28, 82-84, 90,
22  95-97.

23        On June 22, 2010, plaintiff, represented by counsel, appeared and testified
24  at a hearing before the ALJ.  *Id.* at 48-60, 80-81.  The ALJ also heard testimony

25  _____

26        [1]    Psychologists are considered acceptable medical sources whose opinions
    are accorded the same weight as physicians.  20 C.F.R. § 416.913(a)(2).
27  Accordingly, for ease of reference, the court will refer to Drs. Jackson and Borden
28  as physicians.

from Randi Langford-Hetrick, a vocational expert.  *Id.* at 61-80.  In addition, plaintiff amended the alleged onset date ("AOD") to January 30, 2009.  *Id.* at 28, 49.  On July 16, 2010, the ALJ denied plaintiff's request for benefits.  *Id.* at 28-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since his AOD, January 30, 2009.  *Id.* at 30.

At step two, the ALJ found that plaintiff suffered from severe medically determinable impairments consisting of:  schizoaffective disorder, antisocial personality disorder, hypertension, and diabetes.  *Id.*

At step three, the ALJ determined that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined:

> [plaintiff] has the [RFC] to perform a full range of work at all exertional levels consisting of simple 1-2 step tasks with limitation to low stress tasks which permit occasional decision-making, occasional changes in the work setting and occasional exercise in judgment, occasional interaction with the public and coworkers, is limited to superficial, non-confrontational and non-arbitration/negotiation types of interaction, and no exposure to unprotected heights or dangerous machinery, or drive as an occupational requirement.

---

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1    *Id.* (bold omitted).

2      The ALJ found, at step four, that plaintiff was unable to perform any past
3 relevant work. *Id.* at 35.

4      At step five, based upon plaintiff's RFC, vocational factors, and the
5 vocational expert's testimony, the ALJ concluded that there are jobs that exist in
6 significant numbers in the national economy that plaintiff can perform, including
7 night cleaner, cleaner and agricultural sorter. *Id.* 35-36. Consequently, the ALJ
8 concluded that plaintiff did not suffer from a disability as defined by the Social
9 Security Act. *Id.* at 28, 37.

10      Plaintiff filed a timely request for review of the ALJ's decision, which was
11 denied by the Appeals Council. *Id.* at 3-8, 140. The ALJ's decision stands as the
12 final decision of the Commissioner.

13                                **III.**

14                    **STANDARD OF REVIEW**

15      This court is empowered to review decisions by the Commissioner to deny
16 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
17 Administration must be upheld if they are free of legal error and supported by
18 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
19 (as amended). But if the court determines that the ALJ's findings are based on
20 legal error or are not supported by substantial evidence in the record, the court
21 may reject the findings and set aside the decision to deny benefits. *Aukland v.*
22 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
23 1144, 1147 (9th Cir. 2001).

24      "Substantial evidence is more than a mere scintilla, but less than a
25 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such
26 "relevant evidence which a reasonable person might accept as adequate to support
27 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
28 F.3d at 459. To determine whether substantial evidence supports the ALJ's

1  finding, the reviewing court must review the administrative record as a whole,

2  "weighing both the evidence that supports and the evidence that detracts from the

3  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

4  affirmed simply by isolating a specific quantum of supporting evidence.'"

5  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

6  Cir. 1998)). If the evidence can reasonably support either affirming or reversing

7  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

8  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

9  1992)).

10  **IV.**

11  **DISCUSSION**

12  Plaintiff argues that "[t]he ALJ failed to articulate specific and legitimate

13  reasons for rejecting the opinions of Drs. Borden and Jackson," plaintiff's

14  examining and treating physicians, respectively. Pl. Mem. at 8; *see id.* at 3-8. The

15  court agrees.

16  In determining whether a claimant has a medically determinable

17  impairment, among the evidence the ALJ considers is medical evidence. 20

18  C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish

19  among three types of physicians: (1) treating physicians; (2) examining

20  physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester*

21  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating

22  physician's opinion carries more weight than an examining physician's, and an

23  examining physician's opinion carries more weight than a reviewing physician's."

24  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.

25  § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the

26  greatest weight because the treating physician is employed to cure and has a

27  greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80

28  F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

1    Cir. 1989).

2    Nevertheless, the ALJ is not bound by the opinion of the treating physician.

3    *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

4    ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

5    81 F.3d at 830.  If the treating physician's opinion is contradicted by other

6    opinions, the ALJ must provide specific and legitimate reasons supported by

7    substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

8    specific and legitimate reasons supported by substantial evidence in rejecting the

9    contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

10   non-examining physician, standing alone, cannot constitute substantial evidence.

11   *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.

12   Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

13   813, 818 n.7 (9th Cir. 1993).

14   **Dr. Jackson**

15   On January 27, 2009, Dr. Jackson completed a psychological evaluation of

16   plaintiff for the California Department of Corrections and Rehabilitation.  AR at

17   480-82.  Dr. Jackson based this evaluation on at least eight face-to-face

18   "evaluation interviews" conducted over the course of approximately five months

19   (*id.* at 480-84, 486-90); a mental status examination (*id.* at 481); and a review of

20   plaintiff's medical records.  *Id.* at 480-81.  Plaintiff's mental status examination

21   indicated, inter alia, that:  plaintiff was fully oriented and reported poor

22   concentration and being easily distracted; plaintiff's affect was generally

23   congruent with content and his depression was stable on medication; plaintiff

24   reported ongoing anxiety with constant worrying; plaintiff's judgment was

25   inconsistent; and there was evidence of impulsivity and a tendency to take on

26   inappropriate/unrealistic responsibility for others.  *Id.* at 481.  Dr. Jackson

27   diagnosed plaintiff with:  (1) Axis I: 302.2 Pedophilia, 296.7 Bipolar I Disorder,

28   most recent episode unspecified, 304.80 Polysubstance Dependence (alcohol,

6

amphetamine), in remission; (2) Axis II: V71.09 no diagnosis; (3) Axis III: head trauma age 7/8 with possible long-term consequences, right arm weakness, poor rotation ability; (4) Axis IV: Parole Adjustment; and (5) Axis V: current GAF score of 45.[3]  *Id.* at 481-82.  Dr. Jackson opined that, based on plaintiff's reported inability to maintain employment due to symptoms of anxiety and paranoia, plaintiff "would not be able to cope with job demands, supervision, or to interact effectively with co-workers." *Id.* at 482.  Dr. Jackson concluded that plaintiff "appears unable to work." *Id.*

In his decision, the ALJ discredited Dr. Jackson's opinion concerning plaintiff's work restrictions. *See id.* at 34.  According to the ALJ, "Dr. Jackson's opinion was based on [plaintiff]'s assertion that he cannot work because he does not trust people and the only exception was a job in which he worked by himself as a gas station attendant." *Id.*  Moreover, the ALJ noted that

the treatment notes from the Parole Outpatient Clinic [("POC")] . . . do not show that [plaintiff] had any problems getting along with others.  The treatment notes since the amended [AOD] also do not show any complaints of paranoia or other psychotic symptoms.  The treatment notes do not show that [plaintiff] ever reported not being able to trust people.  Indeed, [plaintiff] worked in an automotive repair shop as well as worked in exchange for residence. . . . [T]he

---

[3]   A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect to psychological, social and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34 (bold and capitalization omitted).

1  treatment notes generally show that [plaintiff] was stable on
2  medications and had no complaints.

3  *Id.* The ALJ's reasons were not specific and legitimate reasons supported by
4  substantial evidence.

5  As an initial matter, the ALJ rejected Dr. Jackson's opinion because it was
6  "based on [plaintiff]'s assertion that he cannot work." *Id.* "An ALJ may reject a[]
7  . . . physician's opinion if it is contradicted by clinical evidence. But an ALJ does
8  not provide clear and convincing reasons for rejecting a[] . . . physician's opinion
9  by questioning the credibility of the patient's complaints where the doctor does not
10  discredit those complaints and supports his ultimate opinion with his own
11  observations." *Ryan v. Comm'r*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)
12  (internal citation omitted). Indeed,

13  [c]ourts have recognized that a psychiatric impairment is not as
14  readily amenable to substantiation by objective laboratory testing as
15  is a medical impairment and that consequently, the diagnostic
16  techniques employed in the field of psychiatry may be somewhat less
17  tangible than those in the field of medicine. In general, mental
18  disorders cannot be ascertained and verified as are most physical
19  illnesses, for the mind cannot be probed by mechanical devices in
20  order to obtain objective clinical manifestations of mental illness . . . .
21  *[W]hen mental illness is the basis of a disability claim, clinical and*
22  *laboratory data may consist of the diagnoses and observations of*
23  *professionals trained in the field of psychopathology.* The report of a
24  psychiatrist should not be rejected simply because of the relative
25  imprecision of the psychiatric methodology or the absence of
26  substantial documentation, unless there are other reasons to question
27  the diagnostic technique.

28  *Sanchez v. Apfel*, 85 F.Supp.2d 986, 992 (C.D. Cal .2000) (emphasis added;

1  citations omitted); *see Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989)

2  ("[T]he ALJ must give sufficient weight to the subjective aspects of a doctor's

3  opinion."); *see also* 20 C.F.R. §§ 404.1528(b), 416.928(b) ("Psychiatric signs are

4  medically demonstrable phenomena that indicate specific psychological

5  abnormalities, e.g., abnormalities of behavior, mood, thought, memory,

6  orientation, development, or perception.  They must also be shown by observable

7  facts that can be medically described and evaluated.").

8       Here, before opining that plaintiff has a GAF of 45 and "appears unable to

9  work" (AR at 482), Dr. Jackson performed a psychological evaluation of plaintiff

10  and conducted at least eight face-to-face "evaluation interviews" with plaintiff

11  spanning a period of approximately five months.  *See id.* at 480-84, 486-90.  Dr.

12  Jackson explicitly stated that his psychological evaluation, which includes his

13  opinion concerning plaintiff's work restrictions, was "based on a review of the

14  records and [the] evaluation interviews."   *Id.* at 480.  Notably, Dr. Jackson's

15  psychological evaluation incorporated independent findings concerning plaintiff's

16  mental impairments, including observations made during the course of the

17  evaluation interviews, results from the mental status examination, and clinical

18  diagnoses.  *See Sanchez*, 85 F.Supp.2d at 992.

19       For example, Dr. Jackson found that plaintiff's "[j]udgment, as measured by

20  hypothetical situations, was inconsistent," and that "[t]here was evidence of

21  impulsivity and a tendency to take on inappropriate/unrealistic responsibility for

22  others."  *Id.* at 481.  Likewise, Dr. Jackson observed "ongoing anxiety with

23  constant worry, foot jiggling, [and] pacing."  *Id.* at 483.  Based partly on his

24  findings and a review of the medical records, Dr. Jackson diagnosed Pedophilia,

25  Bipolar I Disorder, Polysubstance Dependence (alcohol, amphetamine), in

26  remission, and a GAF score of 45, indicating "serious symptoms" or "any serious

27  impairment in social, occupational, or school functioning (e.g., no friends, unable

28  to keep a job)."  *Id.* at 481-82; DSM-IV at 34 (bold and capitalization omitted).  In

1    sum, the ALJ's rejection of Dr. Jackson's opinion because it was based on

2    plaintiff's assertion that he cannot work mischaracterizes the bases for Dr.

3    Jackson's opinion and therefore was not a specific and legitimate reason supported

4    by substantial evidence.

5          Moreover, the ALJ's finding that the POC treatment notes failed to

6    substantiate plaintiff's assertions and Dr. Jackson's opinion (*see id.* at 34) is not

7    supported by substantial evidence.  Indeed, a number of the ALJ's conclusions

8    concerning the POC treatment notes mischaracterize or misstate the record.  First,

9    the ALJ found that the treatment notes do not show that plaintiff had any problems

10   getting along with others.  *Id.*  But the notes document that plaintiff discontinued

11   critical diabetes and hypertension treatment in May 2009 because of "an

12   unpleasant interaction with [health provider] staff person" and "a disagreement/

13   misunderstanding with [health provider] staff."  *Id.* at 469, 472.  The notes also

14   show that plaintiff became homeless in May 2009 because of "disagreement w[ith

15   his]res[ident] m[a]n[a]g[e]r's way of doing business."  *Id.* at 472.  Moreover, on

16   December 16, 2008, Dr. Jackson indicated anger management concerns.  *See id.* at

17   483 (listing "[p]lan [to] . . . discuss anger m[a]n[a]g[e]m[en]t principles" after

18   plaintiff stated he "held onto anger since 1990 related to former wife's problems").

19   Finally, plaintiff "[n]oted difficulty of living in residence w[ith ]other parolees"

20   (*id.* at 488), and "[d]iscussed stress at residence" (*id.* at 477), on September 23,

21   2008 and February 24, 2009, respectively.

22         Second, the ALJ found that the POC treatment notes generally show that

23   plaintiff was stable on medications and had no complaints.  *Id.* at 34.  But a

24   substantial portion of the evidence supporting the ALJ's opinion predates the

25   AOD.  *See id.* at 479, 483-89, 491; *Carmickle v. Comm'r*, 533 F.3d 1155, 1165

26   (9th Cir. 2008) ("[m]edical opinions that predate the alleged onset of disability are

27   of limited relevance").  Moreover, even if plaintiff reacted positively to

28   medication (*see, e.g.,* AR at 458, 461, 468, 477-78, 481), the conclusion does not

necessarily follow that plaintiff's mental condition had improved to the extent that plaintiff could function in the workplace. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (evidence that a claimant's medical condition is stable does not necessarily mean that a claimant can work or that her medical condition has improved).

In any event, the ALJ's conclusion that plaintiff had no complaints ignores competent evidence, both before and after the AOD, suggesting that plaintiff suffered various symptoms from his mental impairments. *See, e.g.,* AR at 491 (plaintiff "anxious" on September 8, 2008), 483 ("ongoing anxiety with constant worry" on December 16, 2008), 481 ("ongoing anxiety with constant worry" on January 27, 2009), 477 ("considerable stress" on February 24, 2009), 475 ("[r]ecent depression w[ith ]oversleeping" on March 24, 2009), 464 ("mental illness was serious" and will require "more intense follow up" on August 11, 2009),  462 ("documenting a potential risk/major concern" resulting from plaintiff's homelessness; plaintiff "extremely upset about being homeless and confused as to what he should do"August 12, 2009); *see Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

Third, while the ALJ found that the treatment notes do not show any complaints of paranoia or other psychotic symptoms since the amended AOD (*id.* at 34), this finding is misleading.  A POC treatment note dated January 27, 2009, documents "A[uditory ]Hallucinations]," and "ongoing paranoia" that is "reduced/not as intense[.]" *Id.* at 478.  While this treatment note predates the AOD, it does so by a mere three days.

Finally, the ALJ found that the treatment notes show that plaintiff worked in

an automotive repair shop and worked in exchange for residence. *Id.* at 34. But "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester*, 81 F.3d at 833. Here, while plaintiff indicated he worked as an auto mechanic in January 2009, he described this work as "piece work/part-time" work he performed for a friend. AR at 478. Moreover, the record shows that plaintiff "[s]topped working" in March 2009. *Id.* at 475. And while plaintiff was apparently "working in exchange for residence" in May 2009 (*id.* at 471), by August 2009 plaintiff was unemployed and homeless. *Id.* at 463. In sum, the ALJ's conclusion that the POC treatment notes fail to substantiate plaintiff's claims is not supported by substantial evidence.

**Dr. Borden**

On May 6, 2009, Dr. Borden performed a psychological evaluation of plaintiff. *Id.* at 274-277. Dr. Borden administered a series of tests to plaintiff and reported the following results: (1) plaintiff achieved the low-average range score of 86 on the Bender Visual-Motor Gestalt Test-II (*id.* at 276); (2) plaintiff fell in the bottom 25th percentile on Trail Part A, and below the 10th percentile on Trail Part B (*id.*); (3) results on the Wechsler Adult Intelligence Scale – Third Edition indicated a Verbal IQ score of 76, a Performance IQ score of 76, and a Full Scale IQ score of 74 (*id.*); and (4) plaintiff achieved a score as 7 on the Rey 15-Item Memory Test. *Id.* at 277. While scores of 7 or lower on the Rey 15-Item Memory Test are believed to be indicative of malingering, Dr. Borden opined that "it was not believed that [plaintiff] was malingering" because plaintiff appeared to put forth adequate effort on other tasks. *Id.* Dr. Borden diagnosed plaintiff with: (1) Axis I: history of schizoaffective disorder, pedophilia, and alcohol abuse (*id.*); (2) Axis II: antisocial personality disorder (*id.*); (3) Axis III: no medical problems reported; (4) Axis IV: psychosocial stressors and environmental factors: homelessness (*id.*); and (5) Axis V: current GAF of 50. *Id.* According to Dr. Borden, plaintiff's history of mental disorder would impact his ability to get along

1   with coworkers and maintain concentration, persistence, and pace on even simple
2   repetitive tasks. *Id.* Dr. Borden further indicated that plaintiff is unable to
3   withstand the stress of a routine workday. *Id.*

4       In his decision, the ALJ discredited Dr. Borden's opinion concerning
5   plaintiff's work restrictions. *See* AR at 33-34. According to the ALJ, "Dr.
6   Borden's opinion is not consistent with the mental status examination performed
7   by Dr. Borden or with the treatment records from [POC]." *Id.* at 33. The ALJ
8   further found that "Dr. Borden's opinion is also inconsistent with [plaintiff]'s
9   presentation at the evaluation." *Id.* at 33. In addition, the ALJ noted:

10      Dr. Borden did not have available for her review records from [POC].
11      Thus, it appears that Dr. Borden's opinion was based primarily on
12      [plaintiff]'s subjective psychiatric history and diagnoses made while
13      he was incarcerated, which was prior to the amended [AOD], rather
14      than on objective findings and clinical evidence.

15  *Id.* at 33-34. The ALJ's reasons were not specific and legitimate reasons
16  supported by substantial evidence.

17      First, the ALJ found that Dr. Borden's opinion is not consistent with
18  plaintiff's mental status examination and plaintiff's presentation at the evaluation.
19  *Id.* at 33. But Dr. Borden's opinion accounts for plaintiff's psychological
20  evaluation results in their entirety. Here, by focusing strictly on the mental status
21  examination and plaintiff's presentation at the evaluation, the ALJ misstates or
22  mischaracterizes Dr. Borden's psychological evaluation results. *See Gallant*, 753
23  F.2d at 1456. Specifically, the ALJ fails to account for the following objective
24  findings made by Dr. Borden: (1) plaintiff's score on the Bender Visual-Motor
25  Gestalt Test-II was in the low-average range; (2) plaintiff scored in the 25th
26  percentile on the Trail Part A and he scored below the 10th percentile on the Trail
27  Part B; (3) plaintiff achieved a Full Scale IQ score of 74 and both Verbal and
28  Performance IQ scores of 76; and (4) plaintiff achieved a score of 7 on the Rey 15-

1   Item Memory Test.  AR at 276-77.

2       In addition, "[t]o say that medical opinions are not supported by sufficient

3   objective findings or are contrary to the preponderant conclusions mandated by the

4   objective findings does not achieve the level of specificity our prior cases have

5   required, even when the objective factors are listed seriatim." *Embrey v. Bowen*,

6   849 F.2d 418, 421 (9th Cir. 1988) (emphasis added).  Here, "[the ALJ] merely

7   states that the objective factors point toward an adverse conclusion and makes no

8   effort to relate any of these objective factors to any specific medical opinions and

9   findings he rejects.  This approach is inadequate." *Id.* at 422.  For example, it is

10  unclear how the fact that plaintiff arrived on time for the appointment, was

11  unaccompanied, and reported he is homeless and spends the day attending

12  appointments and visits a friend to bathe (AR at 33, 274-75), is inconsistent with

13  Dr. Borden's opinion that plaintiff would have difficulty getting along with co-

14  workers, maintaining concentration/persistence/pace on even simple repetitive

15  tasks, and withstanding the stress of a routine workday. *Id.* at 277.

16      Second, the ALJ found that Dr. Borden's opinion is not consistent with the

17  treatment records from the POC. *Id.* at 33-34.  But as discussed above with

18  respect to Dr. Jackson, this is not a specific and legitimate reason to reject Dr.

19  Borden's opinion because the ALJ's summary of the POC treatment records

20  ignores competent evidence in the record that contradicts his findings.

21      Third, the ALJ stated that Dr. Borden did not review records from the POC,

22  and her opinion was therefore based primarily on plaintiff's subjective psychiatric

23  history and diagnoses made prior to the amended AOD, rather than on objective

24  findings and clinical evidence. *Id.* at 33-34.  Contrary to what the ALJ states,

25  however, Dr. Borden's opinion relied on the results of a complete psychological

26  evaluation of plaintiff, including general observations, a review of plaintiff's

27  medical records, a mental status examination, clinical testing, and diagnostic

28  impressions. *See id.* at 274-77; *Ryan*, 528 F.3d at 1199-1200 ("[A]n ALJ does not

14

1  provide clear and convincing reasons for rejecting [a] . . . physician's opinion by

2  questioning the credibility of the patient's complaints where the doctor does not

3  discredit those complaints and supports his ultimate opinion with his own

4  observations."); *Sanchez*, 85 F.Supp.2d at 992 ("[W]hen mental illness is the basis

5  of a disability claim, clinical and laboratory data may consist of the diagnosis and

6  observations of professionals trained in the field of psycholpathology.") (citations

7  omitted).  Moreover, medical records that predate the onset date can be relevant,

8  particularly in the case of progressive impairments.  *See* Social Security Ruling

9  ("SSR") 83-20.[4]

10  Accordingly, the ALJ failed to properly evaluate the medical evidence,

11  specifically the opinions of Drs. Jackson and Borden.

## V.

### REMAND IS APPROPRIATE

14  The decision whether to remand for further proceedings or reverse and

15  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

16  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by

17  further proceedings, or where the record has been fully developed, it is appropriate

18  to exercise this discretion to direct an immediate award of benefits.  *See Benecke*

19  *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

20  1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

21  turns upon their likely utility).  But where there are outstanding issues that must be

22  resolved before a determination can be made, and it is not clear from the record

23  _____

24  [4]  "The Commissioner issues Social Security Rulings to clarify the Act's
implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the SSA.  SSRs do not have the force of law.  However, because

26  they represent the Commissioner's interpretation of the agency's regulations, we
give them some deference.  We will not defer to SSRs if they are inconsistent with

27  the statute or regulations."  *Holohan*, 246 F.3d at 1203 n.1 (internal citations

28  omitted).

that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate the opinions of Drs. Jackson and Borden.  On remand, the ALJ shall reconsider the opinions provided by Drs. Jackson and Borden, and either credit their opinions or provide adequate reasons under the appropriate legal standard for rejecting any portion of their opinions.  The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 27, 2013

_____
SHERI PYM
United States Magistrate Judge