UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN KELLY WALLACE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. CV 12-3983-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On May 21, 2012, plaintiff Bryan Kelly Wallace filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents a single disputed issue for decision: whether the

Administrative Law Judge ("ALJ") properly rejected the opinions of Drs. Jackson and Betty L. Borden, plaintiff's treating and examining psychologists, respectively.[1] Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 3-8; Memorandum in Support of Defendant's Answer at 2-6.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinions of plaintiff's treating and examining physicians without providing specific and legitimate reasons supported by substantial evidence for doing so. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-five years old on the date of his June 22, 2010 administrative hearing, has a tenth grade education. *See* AR at 28, 35, 48, 50-51. His past relevant work includes employment for a mowing service. *Id.* at 35, 61.

On January 30, 2009, plaintiff applied for SSI, alleging that he had been disabled since June 15, 2002 due to schizoaffective disorder, substance abuse, antisocial personality disorder, bi-polar disorder, and major depression. *Id.* at 28, 82-84, 90, 161. Plaintiff's application was denied initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 28, 82-84, 90, 95-97.

On June 22, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 48-60, 80-81. The ALJ also heard testimony

---

[1] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. § 416.913(a)(2). Accordingly, for ease of reference, the court will refer to Drs. Jackson and Borden as physicians.

from Randi Langford-Hetrick, a vocational expert. *Id.* at 61-80. In addition, plaintiff amended the alleged onset date ("AOD") to January 30, 2009. *Id.* at 28, 49. On July 16, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 28-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since his AOD, January 30, 2009. *Id.* at 30.

At step two, the ALJ found that plaintiff suffered from severe medically determinable impairments consisting of: schizoaffective disorder, antisocial personality disorder, hypertension, and diabetes. *Id.*

At step three, the ALJ determined that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined:

> [plaintiff] has the [RFC] to perform a full range of work at all
> exertional levels consisting of simple 1-2 step tasks with limitation to
> low stress tasks which permit occasional decision-making, occasional
> changes in the work setting and occasional exercise in judgment,
> occasional interaction with the public and coworkers, is limited to
> superficial, non-confrontational and non-arbitration/negotiation types
> of interaction, and no exposure to unprotected heights or dangerous
> machinery, or drive as an occupational requirement.

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

*Id.* (bold omitted).

The ALJ found, at step four, that plaintiff was unable to perform any past relevant work. *Id.* at 35.

At step five, based upon plaintiff's RFC, vocational factors, and the vocational expert's testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including night cleaner, cleaner and agricultural sorter. *Id.* 35-36. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 28, 37.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 3-8, 140. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues that "[t]he ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of Drs. Borden and Jackson," plaintiff's examining and treating physicians, respectively. Pl. Mem. at 8; *see id.* at 3-8. The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

1  Cir. 1989).

2      Nevertheless, the ALJ is not bound by the opinion of the treating physician.
3  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the
4  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,
5  81 F.3d at 830.  If the treating physician's opinion is contradicted by other
6  opinions, the ALJ must provide specific and legitimate reasons supported by
7  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide
8  specific and legitimate reasons supported by substantial evidence in rejecting the
9  contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a
10 non-examining physician, standing alone, cannot constitute substantial evidence.
11 *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.
12 Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
13 813, 818 n.7 (9th Cir. 1993).

14      **Dr. Jackson**
15      On January 27, 2009, Dr. Jackson completed a psychological evaluation of
16 plaintiff for the California Department of Corrections and Rehabilitation.  AR at
17 480-82.  Dr. Jackson based this evaluation on at least eight face-to-face
18 "evaluation interviews" conducted over the course of approximately five months
19 (*id.* at 480-84, 486-90); a mental status examination (*id.* at 481); and a review of
20 plaintiff's medical records.  *Id.* at 480-81.  Plaintiff's mental status examination
21 indicated, inter alia, that:  plaintiff was fully oriented and reported poor
22 concentration and being easily distracted; plaintiff's affect was generally
23 congruent with content and his depression was stable on medication; plaintiff
24 reported ongoing anxiety with constant worrying; plaintiff's judgment was
25 inconsistent; and there was evidence of impulsivity and a tendency to take on
26 inappropriate/unrealistic responsibility for others.  *Id.* at 481.  Dr. Jackson
27 diagnosed plaintiff with:  (1) Axis I: 302.2 Pedophilia, 296.7 Bipolar I Disorder,
28 most recent episode unspecified, 304.80 Polysubstance Dependence (alcohol,

amphetamine), in remission; (2) Axis II: V71.09 no diagnosis; (3) Axis III: head trauma age 7/8 with possible long-term consequences, right arm weakness, poor rotation ability; (4) Axis IV: Parole Adjustment; and (5) Axis V: current GAF score of 45.[3]  *Id.* at 481-82.  Dr. Jackson opined that, based on plaintiff's reported inability to maintain employment due to symptoms of anxiety and paranoia, plaintiff "would not be able to cope with job demands, supervision, or to interact effectively with co-workers." *Id.* at 482.  Dr. Jackson concluded that plaintiff "appears unable to work." *Id.*

In his decision, the ALJ discredited Dr. Jackson's opinion concerning plaintiff's work restrictions. *See id.* at 34.  According to the ALJ, "Dr. Jackson's opinion was based on [plaintiff]'s assertion that he cannot work because he does not trust people and the only exception was a job in which he worked by himself as a gas station attendant." *Id.*  Moreover, the ALJ noted that

> the treatment notes from the Parole Outpatient Clinic [("POC")] . . . do not show that [plaintiff] had any problems getting along with others.  The treatment notes since the amended [AOD] also do not show any complaints of paranoia or other psychotic symptoms.  The treatment notes do not show that [plaintiff] ever reported not being able to trust people.  Indeed, [plaintiff] worked in an automotive repair shop as well as worked in exchange for residence. . . . [T]he

---

[3]  A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect to psychological, social and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34 (bold and capitalization omitted).

7

> treatment notes generally show that [plaintiff] was stable on
> medications and had no complaints.

*Id.* The ALJ's reasons were not specific and legitimate reasons supported by substantial evidence.

As an initial matter, the ALJ rejected Dr. Jackson's opinion because it was "based on [plaintiff]'s assertion that he cannot work." *Id.* "An ALJ may reject a[] . . . physician's opinion if it is contradicted by clinical evidence. But an ALJ does not provide clear and convincing reasons for rejecting a[] . . . physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (internal citation omitted). Indeed,

> [c]ourts have recognized that a psychiatric impairment is not as
> readily amenable to substantiation by objective laboratory testing as
> is a medical impairment and that consequently, the diagnostic
> techniques employed in the field of psychiatry may be somewhat less
> tangible than those in the field of medicine. In general, mental
> disorders cannot be ascertained and verified as are most physical
> illnesses, for the mind cannot be probed by mechanical devices in
> order to obtain objective clinical manifestations of mental illness . . . .
> *[W]hen mental illness is the basis of a disability claim, clinical and
> laboratory data may consist of the diagnoses and observations of
> professionals trained in the field of psychopathology.* The report of a
> psychiatrist should not be rejected simply because of the relative
> imprecision of the psychiatric methodology or the absence of
> substantial documentation, unless there are other reasons to question
> the diagnostic technique.

*Sanchez v. Apfel*, 85 F.Supp.2d 986, 992 (C.D. Cal .2000) (emphasis added;

citations omitted); *see Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989) ("[T]he ALJ must give sufficient weight to the subjective aspects of a doctor's opinion."); *see also* 20 C.F.R. §§ 404.1528(b), 416.928(b) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  They must also be shown by observable facts that can be medically described and evaluated.").

Here, before opining that plaintiff has a GAF of 45 and "appears unable to work" (AR at 482), Dr. Jackson performed a psychological evaluation of plaintiff and conducted at least eight face-to-face "evaluation interviews" with plaintiff spanning a period of approximately five months. *See id.* at 480-84, 486-90.  Dr. Jackson explicitly stated that his psychological evaluation, which includes his opinion concerning plaintiff's work restrictions, was "based on a review of the records and [the] evaluation interviews."  *Id.* at 480.  Notably, Dr. Jackson's psychological evaluation incorporated independent findings concerning plaintiff's mental impairments, including observations made during the course of the evaluation interviews, results from the mental status examination, and clinical diagnoses.  *See Sanchez*, 85 F.Supp.2d at 992.

For example, Dr. Jackson found that plaintiff's "[j]udgment, as measured by hypothetical situations, was inconsistent," and that "[t]here was evidence of impulsivity and a tendency to take on inappropriate/unrealistic responsibility for others."  *Id.* at 481.  Likewise, Dr. Jackson observed "ongoing anxiety with constant worry, foot jiggling, [and] pacing."  *Id.* at 483.  Based partly on his findings and a review of the medical records, Dr. Jackson diagnosed Pedophilia, Bipolar I Disorder, Polysubstance Dependence (alcohol, amphetamine), in remission, and a GAF score of 45, indicating "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 481-82; DSM-IV at 34 (bold and capitalization omitted).  In

sum, the ALJ's rejection of Dr. Jackson's opinion because it was based on plaintiff's assertion that he cannot work mischaracterizes the bases for Dr. Jackson's opinion and therefore was not a specific and legitimate reason supported by substantial evidence.

Moreover, the ALJ's finding that the POC treatment notes failed to substantiate plaintiff's assertions and Dr. Jackson's opinion (*see id.* at 34) is not supported by substantial evidence. Indeed, a number of the ALJ's conclusions concerning the POC treatment notes mischaracterize or misstate the record. First, the ALJ found that the treatment notes do not show that plaintiff had any problems getting along with others. *Id.* But the notes document that plaintiff discontinued critical diabetes and hypertension treatment in May 2009 because of "an unpleasant interaction with [health provider] staff person" and "a disagreement/misunderstanding with [health provider] staff." *Id.* at 469, 472. The notes also show that plaintiff became homeless in May 2009 because of "disagreement w[ith his]res[ident] m[a]n[a]g[e]r's way of doing business." *Id.* at 472. Moreover, on December 16, 2008, Dr. Jackson indicated anger management concerns. *See id.* at 483 (listing "[p]lan [to] . . . discuss anger m[a]n[a]g[e]m[en]t principles" after plaintiff stated he "held onto anger since 1990 related to former wife's problems"). Finally, plaintiff "[n]oted difficulty of living in residence w[ith ]other parolees" (*id.* at 488), and "[d]iscussed stress at residence" (*id.* at 477), on September 23, 2008 and February 24, 2009, respectively.

Second, the ALJ found that the POC treatment notes generally show that plaintiff was stable on medications and had no complaints. *Id.* at 34. But a substantial portion of the evidence supporting the ALJ's opinion predates the AOD. *See id.* at 479, 483-89, 491; *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance"). Moreover, even if plaintiff reacted positively to medication (*see, e.g.,* AR at 458, 461, 468, 477-78, 481), the conclusion does not

10

necessarily follow that plaintiff's mental condition had improved to the extent that plaintiff could function in the workplace. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (evidence that a claimant's medical condition is stable does not necessarily mean that a claimant can work or that her medical condition has improved).

In any event, the ALJ's conclusion that plaintiff had no complaints ignores competent evidence, both before and after the AOD, suggesting that plaintiff suffered various symptoms from his mental impairments. *See, e.g.,* AR at 491 (plaintiff "anxious" on September 8, 2008), 483 ("ongoing anxiety with constant worry" on December 16, 2008), 481 ("ongoing anxiety with constant worry" on January 27, 2009), 477 ("considerable stress" on February 24, 2009), 475 ("[r]ecent depression w[ith ]oversleeping" on March 24, 2009), 464 ("mental illness was serious" and will require "more intense follow up" on August 11, 2009), 462 ("documenting a potential risk/major concern" resulting from plaintiff's homelessness; plaintiff "extremely upset about being homeless and confused as to what he should do"August 12, 2009); *see Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

Third, while the ALJ found that the treatment notes do not show any complaints of paranoia or other psychotic symptoms since the amended AOD (*id.* at 34), this finding is misleading. A POC treatment note dated January 27, 2009, documents "A[uditory ]Hallucinations]," and "ongoing paranoia" that is "reduced/not as intense[.]" *Id.* at 478. While this treatment note predates the AOD, it does so by a mere three days.

Finally, the ALJ found that the treatment notes show that plaintiff worked in

11

an automotive repair shop and worked in exchange for residence. *Id.* at 34. But "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester*, 81 F.3d at 833. Here, while plaintiff indicated he worked as an auto mechanic in January 2009, he described this work as "piece work/part-time" work he performed for a friend. AR at 478. Moreover, the record shows that plaintiff "[s]topped working" in March 2009. *Id.* at 475. And while plaintiff was apparently "working in exchange for residence" in May 2009 (*id.* at 471), by August 2009 plaintiff was unemployed and homeless. *Id.* at 463. In sum, the ALJ's conclusion that the POC treatment notes fail to substantiate plaintiff's claims is not supported by substantial evidence.

**Dr. Borden**

On May 6, 2009, Dr. Borden performed a psychological evaluation of plaintiff. *Id.* at 274-277. Dr. Borden administered a series of tests to plaintiff and reported the following results: (1) plaintiff achieved the low-average range score of 86 on the Bender Visual-Motor Gestalt Test-II (*id.* at 276); (2) plaintiff fell in the bottom 25th percentile on Trail Part A, and below the 10th percentile on Trail Part B (*id.*); (3) results on the Wechsler Adult Intelligence Scale – Third Edition indicated a Verbal IQ score of 76, a Performance IQ score of 76, and a Full Scale IQ score of 74 (*id.*); and (4) plaintiff achieved a score as 7 on the Rey 15-Item Memory Test. *Id.* at 277. While scores of 7 or lower on the Rey 15-Item Memory Test are believed to be indicative of malingering, Dr. Borden opined that "it was not believed that [plaintiff] was malingering" because plaintiff appeared to put forth adequate effort on other tasks. *Id.* Dr. Borden diagnosed plaintiff with: (1) Axis I: history of schizoaffective disorder, pedophilia, and alcohol abuse (*id.*); (2) Axis II: antisocial personality disorder (*id.*); (3) Axis III: no medical problems reported; (4) Axis IV: psychosocial stressors and environmental factors: homelessness (*id.*); and (5) Axis V: current GAF of 50. *Id.* According to Dr. Borden, plaintiff's history of mental disorder would impact his ability to get along

with coworkers and maintain concentration, persistence, and pace on even simple repetitive tasks. *Id.* Dr. Borden further indicated that plaintiff is unable to withstand the stress of a routine workday. *Id.*

In his decision, the ALJ discredited Dr. Borden's opinion concerning plaintiff's work restrictions. *See* AR at 33-34. According to the ALJ, "Dr. Borden's opinion is not consistent with the mental status examination performed by Dr. Borden or with the treatment records from [POC]." *Id.* at 33. The ALJ further found that "Dr. Borden's opinion is also inconsistent with [plaintiff]'s presentation at the evaluation." *Id.* at 33. In addition, the ALJ noted:

> Dr. Borden did not have available for her review records from [POC]. Thus, it appears that Dr. Borden's opinion was based primarily on [plaintiff]'s subjective psychiatric history and diagnoses made while he was incarcerated, which was prior to the amended [AOD], rather than on objective findings and clinical evidence.

*Id.* at 33-34. The ALJ's reasons were not specific and legitimate reasons supported by substantial evidence.

First, the ALJ found that Dr. Borden's opinion is not consistent with plaintiff's mental status examination and plaintiff's presentation at the evaluation. *Id.* at 33. But Dr. Borden's opinion accounts for plaintiff's psychological evaluation results in their entirety. Here, by focusing strictly on the mental status examination and plaintiff's presentation at the evaluation, the ALJ misstates or mischaracterizes Dr. Borden's psychological evaluation results. *See Gallant*, 753 F.2d at 1456. Specifically, the ALJ fails to account for the following objective findings made by Dr. Borden: (1) plaintiff's score on the Bender Visual-Motor Gestalt Test-II was in the low-average range; (2) plaintiff scored in the 25th percentile on the Trail Part A and he scored below the 10th percentile on the Trail Part B; (3) plaintiff achieved a Full Scale IQ score of 74 and both Verbal and Performance IQ scores of 76; and (4) plaintiff achieved a score of 7 on the Rey 15-

13

Item Memory Test. AR at 276-77.

In addition, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (emphasis added). Here, "[the ALJ] merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any specific medical opinions and findings he rejects. This approach is inadequate." *Id.* at 422. For example, it is unclear how the fact that plaintiff arrived on time for the appointment, was unaccompanied, and reported he is homeless and spends the day attending appointments and visits a friend to bathe (AR at 33, 274-75), is inconsistent with Dr. Borden's opinion that plaintiff would have difficulty getting along with co-workers, maintaining concentration/persistence/pace on even simple repetitive tasks, and withstanding the stress of a routine workday. *Id.* at 277.

Second, the ALJ found that Dr. Borden's opinion is not consistent with the treatment records from the POC. *Id.* at 33-34. But as discussed above with respect to Dr. Jackson, this is not a specific and legitimate reason to reject Dr. Borden's opinion because the ALJ's summary of the POC treatment records ignores competent evidence in the record that contradicts his findings.

Third, the ALJ stated that Dr. Borden did not review records from the POC, and her opinion was therefore based primarily on plaintiff's subjective psychiatric history and diagnoses made prior to the amended AOD, rather than on objective findings and clinical evidence. *Id.* at 33-34. Contrary to what the ALJ states, however, Dr. Borden's opinion relied on the results of a complete psychological evaluation of plaintiff, including general observations, a review of plaintiff's medical records, a mental status examination, clinical testing, and diagnostic impressions. *See id.* at 274-77; *Ryan*, 528 F.3d at 1199-1200 ("[A]n ALJ does not

provide clear and convincing reasons for rejecting [a] . . . physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *Sanchez*, 85 F.Supp.2d at 992 ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psycholpathology.") (citations omitted). Moreover, medical records that predate the onset date can be relevant, particularly in the case of progressive impairments. *See* Social Security Ruling ("SSR") 83-20.[4]

Accordingly, the ALJ failed to properly evaluate the medical evidence, specifically the opinions of Drs. Jackson and Borden.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate the opinions of Drs. Jackson and Borden. On remand, the ALJ shall reconsider the opinions provided by Drs. Jackson and Borden, and either credit their opinions or provide adequate reasons under the appropriate legal standard for rejecting any portion of their opinions. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 27, 2013

SHERI PYM
United States Magistrate Judge